UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOCH ACTON, INC. d/b/a DYNAMIC BEACON, <br><br>　　　　Plaintiff, <br><br>　　v. <br><br>BENJAMIN KOLLER, JUSTIN BRUN, and AGILE CREATIVE SOLUTIONS, LLC, <br><br>　　　　Defendants. | Civil Action No. <br> 21-10374-FDS |

MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION TO DISMISS COUNTERCLAIMS

**SAYLOR, C.J.**

This is a case concerning the alleged appropriation of confidential and proprietary information of a digital-marketing agency by some of its former employees.

Koch Acton, Inc. operates Acton Toyota of Littleton, an automotive dealership, and Dynamic Beacon, a digital-marketing agency. Dynamic Beacon, which is located at Acton Toyota, develops and executes marketing strategies, including online-advertising strategies, for its clients. Those clients include automotive dealerships and related entities.

Benjamin Koller and Justin Brun were hired as sales associates at Acton Toyota in June 2004 and January 2005, respectively. They eventually became sales managers at Dynamic Beacon. In that role, they managed, among other things, client accounts and online sales. They had access to confidential and password-protected client information.

On January 18, 2021, the employment of Koller and Brun with Dynamic Beacon ended. The complaint alleges that around that time they took confidential client information for their

own use.  They also allegedly asked Dynamic Beacon employees for their passwords to access specific client information and provided that information to a third-party vendor.  After obtaining the confidential information, they wiped their Dynamic Beacon computers.  The complaint further alleges that they are using the confidential information in a competing business.

Defendants assert four counterclaims.  Plaintiffs have moved to dismiss all counterclaims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  For the reasons set forth below, the motion will be granted.

## I.     Background

### A.     Factual Background

The following facts are set forth as alleged in the counterclaim.

Benjamin Koller is a resident of Williston, Vermont.  (Dkt. No. 51, Counterclaim ¶ 2).  Justin Brun is a resident of Arlington, Massachusetts.  (*Id.* ¶ 3).  Koller joined Acton Toyota's internet sales department in June 2004 and Brun joined that department in January 2005.  (*Id.* ¶ 10).

In 2011, with authorization from Acton Toyota, Koller and Brun co-founded Dynamic Beacon, a dealer-to-dealer digital marketing agency operating within Acton Toyota.  (*Id.* ¶ 14).  Neither Koller nor Brun entered into any non-competition, non-solicitation, or confidentiality agreements with Acton Toyota or Dynamic Beacon during their employment with either company.  (*Id.* ¶¶ 11, 15).

The key piece of work product Dynamic Beacon created was HTML code for client websites.  (*Id.* ¶ 25).  The code was designed to improve the functionality and visual appeal of client websites.  (*Id.*).  It was built from free, open-source materials.  (*Id.* ¶ 26).  In connection with this work, Koller and Brun each used a laptop that was 50% paid for and owned by Dynamic Beacon and 50% paid for and owned by each of them.  (*Id.* ¶ 24).  Google Workspace,

a cloud-based resource accessible to all Dynamic Beacon employees and independent contractors, was used to store client work product and data. (*Id.* ¶¶ 22, 23).

Allegedly, Dynamic Beacon never asked its employees to keep confidential any of the content stored in the Google Workspace or its client list, nor did the company implement any agreements or policies to that effect. (*Id.* ¶¶ 27, 29). As to the ownership of the work product, the counterclaim alleges that Dynamic Beacon entered into a standard form Marketing Services Agreement ("MSA") with its client dealerships. (*Id.* ¶ 18). Under the terms of the MSA, upon payment, the client would own any work product and all original content Dynamic Beacon created for it. (*Id.* ¶ 19).

In October 2020, Koch Acton acquired Acton Toyota and Dynamic Beacon. (*Id.* ¶ 30). Koller and Brun did not enter into any non-competition, non-solicitation, or confidentiality agreements in connection with that sale. (*Id.* ¶ 31). Before the sale was finalized, according to the counterclaim, the president of Koch Acton, Kurt Koch, assured Brun that there would be no significant changes to the company. (*Id.* ¶ 32). However, Koch Acton shut down Acton Toyota's internet sales department shortly after the ownership change. (*Id.* ¶ 33). By December 2020, according to the counterclaim, Koller and Brun believed Koch Acton was no longer interested in sustaining Dynamic Beacon. (*Id.* ¶¶ 36, 37). Later that month, the vice president of Koch Acton, Tom Koch, terminated Dynamic Beacon's longstanding relationship with an outside business "coach" without notifying Koller and Brun. (*Id.* ¶ 38). The counterclaim alleges that due to growing concerns that Koch Acton would decide to shut down Dynamic Beacon, Koller and Brun began creating backups of the work product Dynamic Beacon had created for clients so that it could be provided to the clients if the company shut down. (*Id.* ¶¶ 40, 41).

On January 18, 2021, Koller and Brun resigned from Acton Toyota and Dynamic Beacon.  (*Id.* ¶ 42).  According to the counterclaim, after resigning from Dynamic Beacon, Koller and Brun removed their personal data from their laptops and reformatted the hard drives, a common practice at the company and within the automobile dealership industry.  (*Id.* ¶ 43).

Koller and Brun then co-founded Agile Creative Solutions LLC, a digital-marketing agency with a principal place of business in Arlington, Massachusetts.  (*Id.* ¶¶ 4, 45).  On February 4, 2021, Koller and Brun hired a former colleague, Christopher Luniewicz, to develop new HTML code to provide web creative services for clients.  (*Id.* ¶ 48).  Luniewicz used free, open-source technology to develop client work product.  (*Id.* ¶ 49).  The counterclaim alleges that defendants did not use any information or materials owned by Dynamic Beacon in connection with Agile's founding or services.  (*Id.* ¶ 46).  It further alleges that they never used any list of current or prospective Dynamic Beacon clients in soliciting clients for Agile, although some former Dynamic Beacon clients have transitioned to Agile.  (*Id.* ¶ 51).

**B.**     **Procedural Background**

On March 5, 2021, Koch Acton, Inc. d/b/a Dynamic Beacon filed a complaint against Koller and Brun.  The complaint asserts seven causes of action:  (1) violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1); (2) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (3) misappropriation and violations of Massachusetts Trade Secrets Law, Mass. Gen. Laws ch. 93, §§ 42, 42A; (4) breach of the duty of loyalty; (5) tortious inference with business relations; (6) unjust enrichment; and (7) violation of Mass. Gen. Laws ch. 93A, § 11.

On April 23, 2021, plaintiff moved for a preliminary junction.  On May 10, 2021, defendants moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  The Court granted in part plaintiff's motion for a preliminary injunction and denied, in its entirety, defendants' motion to dismiss.

On June 15, 2021, plaintiff filed an amended complaint. The amended complaint added a claim for conversion and added Agile Creative Solutions, LLC as a defendant.

Defendants have asserted four counterclaims: conversion (Count 1); declaratory judgment (Count 2); abuse of process (Count 3); and violation of Mass. Gen. Laws ch. 93A, §§ 2, 11 (Count 4). Plaintiff has moved to dismiss defendants' counterclaims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.   Standard of Review

To survive a motion to dismiss, the counterclaim must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the [counterclaim] are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [counterclaim] defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). When determining whether a counterclaim satisfies that standard, a court must assume the truth of all well-pleaded facts and give the counterclaim plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Dismissal is appropriate if the counterclaim fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

**III.    Analysis**

**A.    Count 1:  Conversion**

Under Massachusetts law, an individual may be liable for conversion if he "intentionally or wrongfully exercised acts of ownership, control or dominion over personal property to which he has no right of possession at the time. . . ." *In re Brauer*, 452 Mass. 56, 67 (2008) (citations omitted).  The First Circuit has articulated the elements of the tort slightly differently, holding that a plaintiff alleging conversion under Massachusetts law must show that

> (1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused.

*Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 95 (1st Cir. 1993).

There is some question as to whether the counterclaim pleads sufficient facts to establish the first element.  Defendants contend that plaintiff is liable for conversion because Dynamic Beacon retained laptops in which defendants had a 50% ownership interest and never compensated them for their ownership interest. (Counterclaim ¶¶ 24, 55).  But this means plaintiff also had a 50% ownership interest in the laptops at the time that plaintiff exercised control over the laptops.  And nothing in the counterclaim alleges that defendants were entitled to exclusive control of the laptops.  Of course, it is also unclear how, as a practical matter, control of the laptops can be shared under the circumstances.  Thus, while the counterclaim plausibly alleges that defendants had an ownership or possessory interest in the laptops, it also suggests that plaintiff too had an equal ownership or possessory interest.

In any event, the counterclaim fails to plead sufficient facts to establish the fourth element.  Nothing in the counterclaim alleges that plaintiff wrongfully acquired possession of the

laptops; rather, it seems that plaintiff simply retained possession of the laptops after defendants wiped their personal data from the devices, in accordance with company policy. (Counterclaim ¶ 43). Therefore, it appears that plaintiff legitimately acquired possession of the laptops under a good-faith claim of right. The counterclaim fails to allege facts that establish that defendants demanded payment, or return of the laptops, and that any such demand was refused. In an effort to demonstrate that such a demand would have been futile, defendants, in their opposition memorandum, cite to demand letters that were sent by plaintiff's counsel, after the litigation had begun, and statements made at the preliminary injunction hearing. But the counterclaim itself does not allege any facts sufficient to establish a plausible claim of futility.

Accordingly, the Court will grant the motion to dismiss as to Count 1.

**B.      Count 2:  Declaratory Judgment**

Count 2 of the counterclaim seeks a declaratory judgment as to the ownership interest in the work product created by Dynamic Beacon for its clients. (Counterclaim ¶ 61). Specifically, defendants seek to have this court interpret the contracts between Dynamic Beacon and its clients and determine which contracting party owns the client work product. (*Id.* ¶¶ 60, 61). Plaintiff contends that Count 2 should be dismissed because defendants lack standing, as they are neither a contracting party nor intended third party beneficiary of the contracts at issue. (Dkt. No. 55, Pl. Mem. at 6-7). There is, however, a more fundamental problem with Count 2.

The contracts at issue are between plaintiff and plaintiff's clients. However, none of plaintiff's clients is a party to this suit. "It is well established that a party to a contract which is the subject of the litigation is considered a 'necessary' party." *Blacksmith Invs., LLC. v. Cives Steel Co.*, 228 F.R.D. 66, 74 (D. Mass. 2005) (citations omitted); *see also Rivera Rojas v. Loewen Group Int'l, Inc.*, 178 F.R.D. 356, 362 (D.P.R. 1998) ("A contracting party is the paradigmatic example of an indispensable party."); *Beane v. Beane*, 2008 WL 1787105, at *6-7

7

(D.N.H. Apr. 18, 2008) (finding that because "the substantive claims brought by plaintiffs arise from and relate to" another party's ownership interests, that party is "both a necessary and an indispensable party to [the] suit"). This Court cannot issue a declaratory judgment as to the ownership interests of property between two contracting parties when only one of those parties is a party to the lawsuit. *See Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 637 (1st Cir. 1989) (affirming district court's decision to dismiss declaratory judgment action for failure to join necessary and indispensable parties).

Accordingly, the Court will grant the motion to dismiss as to Count 2.

### C. Count 3 and 4:  Abuse of Process and Mass. Gen. Laws ch. 93A

The defendants bring related counterclaims alleging abuse of process and unfair and deceptive business practices in contravention of Mass. Gen. Laws. ch. 93A, §§ 2 and 11.

#### 1. Abuse of Process

To establish a claim of abuse of process, a plaintiff must show (1) that "process" was used against him (2) for an "ulterior or illegitimate purpose" and (3) that some harm occurred as a result. *Psy–Ed Corp. v. Klein*, 459 Mass. 697, 713 (2011). "To sustain the claim, 'the fact finder must find that process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.'" *Id.* (quoting *Millennium Equity Holdings, LLC v. Mahlowitz*, 456 Mass. 627, 636 (2010)). "An ulterior purpose is not simply the intent to harm the other party directly by bringing suit, but rather the intent to gain some other end indirectly." *Id.* at 713 n.35. "More specifically, abuse of process has been described as a form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money." *Vittands v. Sudduth*, 49 Mass. App. Ct. 401, 406 (2000) (internal quotations omitted).

8

The counterclaim alleges that plaintiff instituted this lawsuit for two ulterior purposes. First, defendants contend that plaintiff used process to gain the benefit of non-competition and non-solicitation covenants for which it did not bargain. (Counterclaim ¶ 64). Second, defendants contend that plaintiff used process to inhibit defendants' ability to compete with plaintiff and to force defendants out of business. (*Id.*) According to the complaint, plaintiff brought this suit in order to "[p]ermanently enjoin Defendants from accessing, using, and disclosing any of the Plaintiff's confidential, proprietary, and trade secret information to all individuals and entities," and sought both a preliminary injunction and damages accordingly. (Compl. at p. 11, ¶ 1).

While it is true that there are no restrictive covenants, the absence of such covenants, without more, does not mean that plaintiff's purpose was to seek a collateral advantage. *See Clean Water Action v. Searles Auto Recycling, Corp.*, 288 F. Supp. 3d 477, 482 (D. Mass. 2018) (noting that "there is no action for abuse of process when the process is used for the purpose for which it is intended but there is an incidental purpose of benefit to the party bringing suit") (citing RESTATEMENT (SECOND) OF TORTS, § 682(B)). Here, the complaint clearly establishes that plaintiff used legal process for the purpose of preventing defendants from using or disclosing plaintiff's proprietary information. And nothing in the counterclaim alleges sufficient facts to establish that plaintiff, instead, had some ulterior purpose for bringing this suit.

That is true even if the complaint is ultimately found to be without merit. Although "[d]riving a competitor out of business through *baseless* litigation" can constitute a collateral advantage for an ulterior or illegitimate purpose, there is nothing to suggest that plaintiff's claims here are baseless. *Scholz v. Goudreau*, 2013 WL 6909433, at *7 (D. Mass. Dec. 26, 2013) (emphasis added) (citing *Refuse & Env't Sys., Inc. v. Indus. Servs. of Am., Inc.*, 932 F.2d 37, 42

(1st Cir. 1991)).  The filing of "baseless" litigation is distinct from "unsuccessful but reasonably based suits."  *Psy-Ed Corp.*, 459 Mass. at 709 (quoting *Sahli v. Bull HN Info. Sys., Inc.*, 437 Mass. 696, 702-704 (2002)).  Baseless litigation or "'[s]ham' litigation . . . is litigation that is 'objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits,' and also is subjectively motivated by the litigant's desire to use the governmental process—as opposed to its outcome—to influence or harm the target of the litigation."  *Id.* at 709 (quoting *Sahli,* 437 Mass. at 702-703).

Nothing in the counterclaim suggests that plaintiff's claims are objectively baseless. Moreover, in sustaining plaintiff's motion for a preliminary injunction, this Court already found that plaintiff had demonstrated a likelihood of success on the merits as to the claims that are based on unlawful appropriation of proprietary information.  (Dkt. No. 37, Order on Pl. Mot. for Preliminary Injunction, at 2).  Furthermore, the Court denied defendants' motion to dismiss. (Dkt. No. 36).

Accordingly, the Court will grant the motion to dismiss as to Count 3.

### 2. Mass. Gen. Laws ch. 93A

Mass. Gen. Laws. ch. 93A, § 2(a) prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Under this section, "misuse of legal process to obtain a commercial advantage has long been recognized as a violation."  *Fafard Real Est. & Dev. Corp. v. Metro-Bos. Broad., Inc.*, 345 F. Supp. 2d 147, 154 (D. Mass. 2004); *accord Refuse & Env't Sys., Inc.*, 932 F.2d at 43.  In addition, "[a] party may bring a claim under c. 93A against another party which willfully filed a baseless lawsuit." *George Hyman Const. Co. v. Gateman*, 16 F. Supp. 2d 129, 162 (D. Mass. 1998).

As discussed, there is nothing in the counterclaim that sufficiently alleges that plaintiff used the legal process for an illegitimate purpose, or that plaintiff's claims are baseless.

10

Furthermore, as defendants' chapter 93A claim is based upon their claim for abuse of process, it must also fail. *See Computer Sales Int'l, Inc. v. Lycos, Inc.*, 2008 WL 11388595, at *4 (D. Mass. Sept. 26, 2008).

Accordingly, the Court will grant the motion to dismiss as to Count 4.

## IV.    Conclusion

For the foregoing reasons, plaintiff's motion to dismiss is GRANTED.

**So Ordered.**

Dated: March 22, 2022

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court