UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KOCH ACTON, INC. D/B/A DYNAMIC BEACON, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | C.A. No. 1:21-cv-10374-FDS |
| v. | ) | |
| | ) | FILED UNDER SEAL |
| BENJAMIN KOLLER, | ) | (ECF No. 135) |
| JUSTIN BRUN, AND | ) | |
| AGILE CREATIVE SOLUTIONS LLC | ) | |
| | ) | |
| *Defendants.* | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Koch Acton Inc. d/b/a Dynamic Beacon ("Dynamic Beacon") opposes Defendants

Benjamin Koller ("Koller"), Justin Brun ("Brun") and Agile Creative Solutions LLC's ("Agile")

(collectively, "Defendants") Motion for Summary Judgment as to all of its claims. The crux of

Defendants' contentions are that Plaintiff does not have standing to pursue these claims and that

Plaintiff does not own the proprietary information at issue. However, Plaintiff, and no other entity

or individual but Plaintiff, has standing to pursue legal action to address Defendants' wrongdoing.

Moreover, the record has demonstrated that no other entity or individual, but Plaintiff, owns the

files it created and utilized to operate its business. Further, the record has demonstrated

Defendants' use of Plaintiff's files. Defendants' contention that the forensic audit in some manner

showed otherwise is inaccurate.[1]  As to the remaining elements of Plaintiff's claims, the record

demonstrates that Defendants' Motion must be denied.

---

[1] To that end, the forensic audit reviewed what files were present on Defendants' devices, it did not conclude how Plaintiff's files were used.

In support of this opposition, Plaintiff relies upon its Response to Defendants' LcR 56.1 Statement (referred to as "the 56.1 Statement"), Plaintiff's Motion for Summary Judgment pleadings, and this Memorandum of Law.

### ARGUMENT

**I.    PLAINTIFF HAS STANDING TO BRING THIS ACTION.**

   A. *Plaintiff purchased Dynamic Beacon, and accordingly, is the sole entity that has standing to bring this action to seek redress for Defendants' actions.*

There is no dispute that Koch Acton, Inc. ("Koch") purchased the operating dealership from which Dynamic Beacon operated via a July 28, 2020 Asset Purchase Agreement (the "APA"). *See* Defendants' Memorandum of Law, at pp. 4-5. It is also not disputed that prior to the APA, Dynamic Beacon was owned by seller RR Moran. *Id.*   According to the APA,  RR Moran conveyed to Koch the following:



Defendants' Joint Appendix, Ex. 26, at Section 1.1.  The specifically described assets are listed within subsections of Section 1.1, consisting primarily of vehicle and part descriptions, as well as the following:

*Id.* at Section 1.1.6.  Dynamic Beacon, as a d/b/a of the seller, and all of its information and documents, records, customer lists, come squarely within this specific provision, as well as the general provision of 1.1. as an "asset."

Despite this language, Defendants take a position that this asset list within the APA confines what was sold, and therefore, because the d/b/a Dynamic Beacon is not listed as a specific asset, it is excluded.  *See* ECF No. 137, at p. 8.  This assertion is contrary to the plain language of the APA which unequivocally conveys the assets specifically listed *inclusive* (not exclusive) of any and all assets belonging to the dealership.  Defendants agree that Dynamic Beacon was an asset belonging to RR Moran, and accordingly, it conveyed to Plaintiff.

Moreover, upon consummation of the sale, Dynamic Beacon's employees were paid by Koch and operated Dynamic Beacon within the confines of the Koch dealership. *See* 56.1 Statement, at ¶ 89.  Further, Defendants are relying on the Koch purchase as part of their defense to copying Dynamic Beacon's proprietary information.  Specifically, it is this very purchase which allegedly is the reason Defendants copied files as they were concerned that the new ownership would not preserve Dynamic Beacon (a contention which Plaintiff contests, and is belied by the fact Plaintiff continues to operate Dynamic Beacon).  *Id.* at 61-66. [2]  The APA and the subsequent actions of all parties leave no dispute as to ownership of Dynamic Beacon.

---

[2] While Plaintiff does not contend, at this time, that Defendants competing positions should amount to judicial estoppel as the Court has not adopted their position as to why the files were copied in any ruling; however, Plaintiff expressly reserves the issue in light of these starkly contrary positions taken in this litigation via affidavits (Brun and Koller's most recent affidavits seek to make the contention) and dispositive pleadings:  "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.' … This rule, known as judicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in

B.  *The Marketing Services Agreement conveys only a limited use of Dynamic Beacon's proprietary information, it does not Convey ownership of Dynamic Beacon's business proprietary information.*

Defendants attempt to define the propriety information at issue in this suit to be limited to only the data that appears on client websites. *See* ECF No. 137, at pp. 10-11. Defendants then cite to the client agreements, titled Marketing Services Agreement, attached at <u>Exhibit 14</u> (sealed exhibit) to ECF No. 142, which in effect are subscription agreements that assign limited use of Dynamic Beacon's intellectual property only when the client pays for same ("the MSA"). The pertinent part of the MSA, reads as follows:



---

another phase.'" *See Vlt, Inc.* v. *Power-One, Inc.*, No. 01-CV-10207-PBS, 2003 U.S. Dist. LEXIS 81, at *6-8 (D. Mass. Jan. 3, 2003) citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal citations omitted).

*Id.* at ¶ 7 (emphasis added).

The MSA itself, which Defendants rely on to divest Dynamic Beacon of ownership of its proprietary business information, states unequivocally that a client has a ████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████. *Id.* Simply, because a client might own an ability to ████████████████████████████████████████████████ ██ it does not flow that it then owns the entirety of Dynamic Beacon's files that Dynamic Beacon used in the operation of its business. Rather, ██████████████████████████████ ████████████████████████████████████. *Id.*

The proprietary information at issue in this case are the actual files and repository of stored information within Dynamic Beacon's Google Drive, Asana system, and Mail chimp program which are used to operate the business. *See* 56.1 Statement, at ¶ 91. These are exclusively Dynamic Beacon files, for use by Dynamic Beacon employees only, and not subject to or contemplated by the MSA. *Id.*

II. **PLAINTIFF'S CLAIMS SURVIVE SUMMARY JUDGMENT AS THE RECORD DEMONSTRATES THEY HAVE MET EACH AND EVERY ELEMENT.**

A. *The record establishes Plaintiff's proprietary information is protected by the respective state and federal Trade Secret Statutes.*

Defendants seek this Court to enter judgment against Plaintiff's Defend Trade Secret Act, 18 U.S.C. § 1836(b)1 and Massachusetts Uniform Trade Secret Law, M.G.L. c. 93 §§ 42,42A. Defendants argues the claims are deficient because the files that Defendants copied are generally known and public, and that Plaintiff did not reasonably protect its alleged trade secrets. *See* ECF no. 137, pp. 13-14. Accordingly, Plaintiff focuses on these two contentions solely for purposes of this opposition.

      i.      The record demonstrates that the proprietary information is not only not generally known, but that Defendants themselves believed it was intellectual property necessitating protection and confidentiality.

The record has developed in a manner (since the Preliminary Injunction stage) to demonstrate that the materials taken by Brun and Koller, are the culmination of a decade worth of growth and work. Specifically, the record has developed that the style sheets, frameworks, and relevant testing involved resulted in a unique methodology. *See* 56.1 Statement at ¶¶ 85 (Response), 92. Defendants' continued contention that the repository of information created by Dynamic Beacon was all capable of being copied and utilized by others as it is publicly available on the internet is a contention that is flatly contested by Plaintiff, including in testimony by Dynamic Beacon's lead designer, Robert "Bobby" Kemp, as well as by Plaintiff's offered expert testimony. *Id*. at ¶ 86 (Response). Specifically, the record has developed that testing of the code is imperative, and an activity that takes significant time and expertise to be able to implement successfully. *Id.* In sum, having the ability to copy code on the back end of a website does not equate to the tested and tried code, developed over years at Dynamic Beacon. *Id.* Defendants' purported record does not in any manner address this next step of testing and implementation. Nor does Defendants' purported record address Plaintiff's expert's contention that such use of open source coding, as contemplated by Defendants to recreate websites, is considered theft in the technical community. *Id.* While Plaintiff contends the record establishes judgment in its favor because Defendant fails to address these contentions, at the very least, it is not an appropriate record for summary judgment in favor of Defendants.

Additionally, the MSA's language, as well as Defendants' own efforts to protect Dynamic Beacon work product while employees of Dynamic Beacon, underscore that Defendants

considered what Dynamic Beacon produced, and its associated repository of information, was "proprietary" and "intellectual property." *See* 56.1 Statement, at ¶ 93, MSA, <u>Ex. 14</u> (sealed), at ¶ 5.  The MSA, heavily relied upon by Defendants to nullify Plaintiff's claims, in pertinent part provide as follows:



*Id.* at ¶ 5.  Further, in April of 2014, acting on behalf of Dynamic Beacon, the Defendants took the position that Dynamic Beacon created proprietary work when it sent a cease and desist letter to a dealership in Florida claiming the dealership stole its code and was utilizing it on its website.  *See* 56.1 Statement, at ¶ 93.

Defendants should not be permitted to now contend the very same information they once claimed was proprietary, intellectual property is now publicly available because code can be accessed on the internet.  In this way, Defendants position has changed to whatever position serves their best advantage.   They should not be permitted to shift positions in this manner to defeat this claim at summary judgment.

        ii.     Plaintiff reasonably protects its trade secrets in a manner that was appropriate for its business purposes.

Defendants next contend that Plaintiff failed to protect its trade secrets.  "One who possesses a trade secret and wishes to protect it must act to preserve its secrecy." *Picker Int'l Corp.* v. *Imaging Equip. Servs.*, 931 F. Supp. 18, 23 (D. Mass. 1995) (internal citations omitted).

"It is not necessary, however, that an 'impenetrable fortress' be erected to retain legal protection for a trade secret….[r]ather, reasonable security precautions are required." *Id.* (internal citations omitted). "In determining whether reasonable security precautions have been taken: "Relevant factors to be considered include (1) the existence or absence of an express agreement restricting disclosure, (2) the nature and extent of security precautions taken by the possessor to prevent acquisition of the information by unauthorized third parties, (3) the circumstances under which the information was disclosed . . . to (any) employee to the extent that they give rise to a reasonable inference that further disclosure without the consent of the possessor is prohibited, and (4) the degree to which the information has been placed in the public domain or rendered 'readily ascertainable' by the third parties through patent applications or unrestricted product marketing." *Id.* (internal citations omitted). The circumstances of each case dictates what is reasonable, while considering the conduct of the parties and the type of information at issue. *Id.*

At the outset, all the files in question were only accessible by Dynamic Beacon employees, and were subject to password protection or an employee log in. *See* 56.1 Statement (Responses) at ¶¶ 51, 52, 94. In this particular case, with a small company of Dynamic Beacon's nature, the precautions put in place are precisely those that were appropriate. *Id.* at ¶ 94. Moreover, the MSA, as well as Defendants' own action in sending demand letters to protect its information, are actions which demonstrate efforts that Defendants themselves deemed appropriate and necessary to safeguard Dynamic Beacon's product. *See* Section IIA(ii) herein. At the least, this is a jury issue that has yet to be vetted between the two experts as to what security provisions are appropriate for this type of company. At this stage, Defendants have not established any other security protections

are necessary for a company such as Dynamic Beacon, and accordingly their Motion should be denied.

            B.   The record establishes that Plaintiff has demonstrated evidence of damages as a result of Defendants' conversion.

Defendants contend that Plaintiff cannot succeed on its claim for conversion because (1) it cannot prove conversion damages, and (2) because Defendants copied the materials. On the latter point, Plaintiff interprets this argument to mean that because it was a copying, and not a full taking and elimination of access to the files, Plaintiff has not been fully deprived of its property rights. Defendants do not contest the other elements of conversion, and accordingly, Plaintiff only addresses these specific contentions- which fail as a matter of law.

        i.      *Damages.*

"A person who establishes a claim for conversion is entitled to damages, which are measured by the value of the converted goods at the time of the conversion, with interest from that time. *Espinosa* v. *Metcalf*, No. 21-cv-10356-DJC, 2023 U.S. Dist. LEXIS 108598, at *13 (D. Mass. June 23, 2023) citing *Welch v. Kosasky*, 24 Mass. App. Ct. 402, 404, 509 N.E.2d 919 (1987). "If the owner of the converted property retakes the property, 'he may recover as damages the difference between the value of the property when converted and when returned, plus damages for loss of use during the period of wrongful detention.' *Id.* quoting *Turner v. Hubbard Sys., Inc.*, 153 F. Supp. 3d 493, 494 (D. Mass. 2015) (quoting *George v. Coolidge Bank & Trust Co.*, 360 Mass. 635, 641 (1971)); Restatement (Second) of Torts § 931 (1979) (noting "[i]f one is entitled to a judgment for the detention of, or for preventing the use of, land or chattels, the damages include compensation for (a) the value of the use during the period of detention or prevention or the value of the use of or the amount paid for a substitute . . .").

In the unique context of the situation and files at present here, the decision in the *Governo Law Firm, LLC* v. *CMBG3 Law, LLC*, 36 Mass. L. Rep. 24, 2019 Mass. Super. Lexis 444, *5-6 (2019) (finding the Governo Law Firm was entitled to seek disgorgement of any unjust profits earned by Defendants from using the Governo Firm's property) is instructive on this point:

> "Defendants took copies of the disputed materials but left the original electronic files intact with the Governo Firm. As a result a different measure of damages applied here. The Supreme Judicial Court 'has recognized three acceptable methods of measuring damages in cases involving business torts such as the misappropriation of trade secrets' or other proprietary information or databases: 'the defendant's profits realized from his tortious conduct, the plaintiff's lost profits, or a reasonable royalty.'"

*Id.* quoting *Curtiss-Wright Corp. v. Edel-Brown Tool & Die Co.*, 381 Mass. 1, 11, 407 N.E.2d 319 (1980). "[T]he 'reasonable royalty' measure of damages is only appropriate where the defendant has made no actual profits and the plaintiff is unable to prove a specific loss." *Id.* citing *Curtiss-Wright Corp.,* 381 Mass. at 11 n.9, quoting *Jet Spray Cooler, Inc. v. Crampton*, 377 Mass. 159, 171 n.10 (1979). "Furthermore, 'the value of the misappropriated trade secrets to the defendants is not the basis of the defendants' liability, and the value of the misappropriated trade secrets should not form the basis of the plaintiffs' recovery." *Id.* quoting *Jet Spray II*, 377 Mass. at 172. The value of the goods converted can be assessed by lost profit analysis for purposes of calculating damages. *See People's Choice Mtge., Inc.* v. *Premium Capital Funding, LLC*, 26 Mass. L. Rep. 582 (2010) (wherein the court equated the fair market value of goods to be equal to lost profits related to certain loans at issue in the conversion count) citing *Welch v. Kosasky,* 24 Mass. App. Ct. 402, 404-05 (1987); *20 Atl. Packaging Inc.* v. *Allied Waste Indus.*, No. 03-10987-MLW, 2008 U.S. Dist. LEXIS 136480, at *18 (D. Mass. Jan. 30, 2008) citing *Farmington Dowel Prods., Co.*

*v. Forster Mfg. Co.*, 421 F.2d 61, 81 (1st Cir. 1970) (lost profits used to assess valuation of a company).

The record reflects that because Defendants converted Dynamic Beacon's property, it suffered pecuniary losses. *See* 56.1 Statement at ¶ 96. The Plaintiff's expert provides the analysis of the monetary value of what this theft caused via lost profits and unjust enrichment. *Id.; Governo Law Firm, LLC*, 2019 Mass. Super. Lexis 444 at *5-6. As a business tort, this is the appropriate measure of damages to value the property taken and utilized by Defendants, and Plaintiff's alleged damages are recoverable under conversion. Defendants' motion on this point should be denied.

       ii.     *Copying.*

Defendants' argument that they merely copied, and did not deprive, Dynamic Beacon of its proprietary information is immaterial to the claim of conversion. "The related argument that there could be no conversion here because the Governo Firm retained copies of all the materials taken by Defendants is unavailing as well." See *Governo Law Firm, LLC,* 2019 Mass. Super. Lexis 444, *6 citing *Datacomm Interface, Inc.* 396 Mass. at 773-75 ("defendant-in-counterclaim liable for conversion by retaining and using carbon copy of magazine circulation list, after returning original list to rightful owner"). This is because '"[c]onversion is the 'wrongful exercise of dominion or control over the personal property of another.' " *Id.* citing *Waxman*, 84 Mass. App. Ct. at 321, quoting *Cahaly v. Benistar Property Exch. Trust Co.*, 68 Mass. App. Ct. 668, 679 (2007). "There is no requirement that the one converting property be shown to have had the intent to deprive permanently the rightful owner of its use and enjoyment, as in stealing." *Id.* quoting *In re Hilson*, 448 Mass. 603, 611, 863 N.E.2d 483 (2007).

Accordingly, the fact that Defendants copied and did not ultimately deprive Dynamic Beacon of its proprietary information is without merit.

C.  *Defendants' actions support a claim for M.G.L. c. 93A.*

Defendants assert M.G.L. c. 93A does not apply because (1) the bad act of copying the files by one Defendant occurred while the Defendant was in Vermont; and (2) M.G.L. c. 93A cannot be alleged against Agile, because the copying conduct occurred prior to Agile's formation. Both arguments fail. M.G.L. c. 93A is appropriately applied in this case which involves the unauthorized taking and using of a Massachusetts' company's proprietary materials.  As these are the two contentions supporting Defendants' present motion, Plaintiff only addresses these contentions herein, and otherwise refers to its Motion to Summary Judgment as to the complete merits of its 93A claim.

Defendants, as employees of Plaintiff, a Massachusetts' company, harmed that Massachusetts' company by accessing and taking its business proprietary files, and using same to compete with Plaintiff via another Massachusetts' company (Agile).  "The purpose of chapter 93A is to 'encourage more equitable behavior in the marketplace and impose liability on persons seeking to profit from unfair practices.'" *Pine Polly, Inc.* v. *Integrated Packaging Films IPF, Inc.*, No. 13-11302-NMG, 2014 U.S. Dist. LEXIS 36757, at *19-21 (D. Mass. Feb. 27, 2014) quoting *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 582 F.3d 156, 194 (1st Cir. 2009) (further citations omitted).  "Defendant bears the underlying burden to show that the  conduct  did  not occur primarily  and  substantially in Massachusetts. *Id.* (further citations omitted).   There is no precise formula, however the center of gravity test which looks to promote the purpose and scope of 93A, considers examining the actionable conduct, the "situ of loss", and where the plaintiff received or acted upon the misconduct.  *Id.* citing *Auto Shine Car Wash Systems,*

*Inc. v. Nice 'N Clean Car Wash, Inc.*, 58 Mass. App. Ct. 685,685 (Mass.App.Ct. 2003); *Kuwaiti*

*Danish Computer Co. v. Digital Equip. Corp.*, 438 Mass. 459, 781 N.E.2d 787, 798-99 (Mass.

2003).

The record has established that Dynamic Beacon, the owner of the files at issue, is a

Massachusetts company, operating in Massachusetts.  *See* 56.1 Statement, at ¶ 95. The record

establishes that Defendants accessed and copied the Massachusetts' company's files (regardless

of their stated purpose for doing so).  *Id.* at 91.  Moreover, while Koller claims he was in Vermont

when he accessed and copied Dynamic Beacon's files, Brun was in Massachusetts.  *Id.* at ¶ 90.

Notably, Defendants do not even discuss Brun's location in making the present argument. The

brunt of the effect of the Defendants' actions are felt in Massachusetts, and Defendants

affirmatively reached into the Commonwealth by impermissibly copying files of a company

located here.  Because Koller chose to access the files while in Vermont does not mean that all

Defendants, including Koller, are absolved from liability of Massachusetts' statutes, including

M.G.L. c. 93A.  Fairness and the purposes of M.G.L. c. 93A dictate the opposite result.

Defendants next contend that Defendant Agile cannot be subject to the M.G.L. c. 93A

claim because it was formed three days after their alleged taking of files and/or resignation from

Dynamic Beacon.  *See* ECF No. 137, at p. 20.  First, Agile became a d/b/a of one of its principal's

corporations on January 18, 2021, the same day Defendants resigned, and three days earlier than

its incorporation. *See* 56.1 Statement, at ¶ 97.  Further, the concept of Agile was in places months

prior.  *Id.*  Plaintiff's contention, as demonstrated via its expert, is that all Defendants, utilized

Plaintiff's files for Agile clients, which squarely places Agile at the heart of the unfair and

deceptive business practices by using information that was wrongfully obtained by Brun and

Koller to service its clients. *See Governo,* 2019 Mass. Super. Lexis 444, at \*5-6; *See* 56.1 Statement, at ¶ 76 (Response). Moreover, it is uncontested that Agile's employee Christopher Luniewicz had Dynamic Beacon proprietary files *after* Agile was formed, *after* the initiation of this suit, and most poignantly *after* the Preliminary Injunction in this matter ordered that such materials cease use and be returned. *Id.* at ¶¶ 79-81. Agile cannot avoid liability on a technicality that it was formed after Defendants left Dynamic Beacon because it existed in concept earlier, and it was the vehicle through which Defendants profited from their misappropriation of Plaintiff's proprietary information.

> D. *The record has established that Defendants Interfered with Plaintiff's Business Relationships.*

The crux of Defendants' argument on this point, is that the record demonstrates that clients left on their own accord and therefore Defendants' taking of Plaintiff's business information could not have caused Plaintiff harm under this ort. This argument misses the point that the claim is but for their taking of the business proprietary materials, Defendants could not have serviced those clients for a significant period of time. Plaintiff has laid out this particular claim in its own pending Motion for Summary Judgment. To succeed on this tort, a plaintiff must show that: (1) a business relationship with a third party from which it derived economic benefit, (2) the defendants knew of that relationship, (3) the defendants interfered with that relationship through improper motive or means, and (4) the plaintiff's loss of advantage resulted directly from the defendants' conduct. *Cape Cod ASC, LLC* v. *Bentivegna*, Nos. 111989, 2008-457, 2010 Mass. Super. LEXIS 167, at \*8 (July 1, 2010) citing *Curtis v. Herb Chambers*, 75 Mass. App. Ct. 662, 672 (2009).

Plaintiff's allegation is that there is no dispute that Agile took ten Dynamic Beacon customers within weeks of separating from Dynamic Beacon. Defendants were able to take this

business relative to these clients as they were able to immediately (within days according to Defendant Koller) service these clients. *See* Plaintiff's Motion for Summary Judgment, ECF No. 139, pp. 10-11. Whether clients knew Defendants had taken the information is irrelevant- the operative point is the ability to take the clients immediately, and deprive Dynamic Beacon of those contracts, was through improper means- the taking of the proprietary information. Accordingly, as their Motion fails to address the heart of the allegations relating to this tort, specifically the motive and means of the interference, the Motion on this point should be denied.

        E.  *Computer Fraud & Abuse Act.*

During the pendency of this litigation, the *Van Buren v. United States*, 141 S. Ct. 1648 (2021) decision clarified the elements relating to claims under the Computer Fraud and Abuse Act (18 U.S.C. § 1030 et seq) ("CFAA"), an area that had been previously subjected to differing interpretation. The significant clarification from that ruling is that a violation of the CFAA does not occur, even with misuse of the information, if the information was obtained through authorized access. *Id.* at 1652. Plaintiff agrees with Defendants that Brun and Koller had "unfettered access to Dynamic Beacon's applications and files" (ECF No. 137, at p. 12), and that access, under the new ruling, does defeat this particular claim.[3]

**CONCLUSION**

WHEREFORE, for all the above stated reasons, this Court should deny Defendants' Motion for Summary Judgment as to the Counts of the Amended Complaint, excepting herein, the claim related to the Computer Fraud and Abuse Act.

---

[3] While the Parties conferenced relative to the Motion for Summary Judgment, this issue was not raised. Had it been so, Plaintiff would have conceded the *Van Buren* result and its application to Defendants/ use of their computers.

Respectfully submitted,

Plaintiff,

**KOCH ACTON, INC.**
**D/B/A DYNAMIC BEACON,**

By their attorneys,


 */s/ Rachel E. Moynihan*

Rachel E. Moynihan, BBO #663887
FISHER BROYLES, LLP
75 State Street, Suite 100
Boston, MA 02109
Telephone: (603) 498-0701
*rmoynihan@fisherbroyles.com*


Dated: July 7, 2023

**<u>CERTIFICATE OF SERVICE</u>**

I, Rachel E. Moynihan, certify that on this 7th day of July, I served the within document electronically through ECF:

*/s/ Rachel E. Moynihan*
Rachel E. Moynihan (BBO # 663887)